May it please the court, Sasha Petrova, counsel for appellant Bobby Charlton. I'd like to reserve two minutes for rebuttal, please. This appeal is about who bears the consequences of the state's failure to preserve relevant evidence. Mr. Charlton moved for sanctions based on spoliation of relevant video evidence showing the immediate aftermath of him being pepper sprayed. The district court denied that motion by incorrectly applying the spoliation law to conclude, first, that the defendants had no duty to preserve this evidence, and second, alternatively, that defendants complied with this duty by simply giving the video footage to the Oregon State Police without ensuring that it is actually saved for future litigation. As a result of this- Can I ask a question? When they gave it to the state police, that was because it was necessary for criminal prosecution, right? That is correct. Was there any indication? What's their duty to save it for potential future civil litigation? Are we now to assume that every time there's a criminal prosecution, it's just inevitable that there's going to be civil litigation in light of that, and so a duty attaches? So, your honor, there was a duty here because there's two sources of duty here to preserve. It's both the common law and the defendant's own policies, and specifically here, the defendant's policies had an unusual incident report policy where everything where there's a use of force or there's a threat of harm, that classifies as an unusual incident, and those records are preserved for 10 years under policy. It is not beyond the pale of imagination that something that results in an unusual incident report and then resulted in a concurrent criminal investigation could also give rise to civil litigation, as it did in this case. And so, at the time, the duty here attached immediately. Immediately when this incident happened, the unusual incident report was drafted. This video was described in that unusual incident report, and it's just not too far an inferential leap that some sort of litigation would arise from this incident. And in fact, the law makes clear that... If I may interrupt, does a company or here a government's internal preservation policy create a duty, or is that more directed toward culpability? Because it seems like you create disincentives for people to have a robust retention policy if that automatically creates a duty. I mean, I think it may be better suited for analyzing the culpability if you don't follow your own policy. Yes, Your Honor. That is one way of looking at it, and it's true that there have been district courts throughout this circuit who have analyzed the existence of a retention policy and a party's failure to comply with that policy under the culpability, the second element of this foliation inquiry. Under the law generally in this circuit, the standard is objective. The duty to preserve arises immediately here because the parties here should have been on notice that this evidence could have been relevant to potential litigation. And in fact, they were given repeated notice. On December 23, 2014, that's when the incident occurred. The unusual incident report gets created that very same day the duty attaches. January 5, 2014 was first grievance, a second grievance in January of 2015, and only after that was the video picked up by the Oregon State Police. After that, there's been three other notices given to the... What's the basis for the grievances creating a duty separate from the retention policy? Because I mean, that seems to me to be a much broader statement to say every time a grievance is made, is there something in the policy that says grievance, when a grievance is made, they have to retain documents? No, Your Honor. There's nothing in the policy that says a grievance equates to a duty... You're just saying it was a reminder of the incident, basically. Correct. This is actual notice to the defendants that this material, this evidence, the SD card video footage would be relevant, foreseeably relevant, to future potential litigation. The standard is not that it has... Right. But I guess my point is that only because it seems to me that argument only traces back to the unusual incident report, potentially. Because it can't be the case that absent a retention policy, that they have to retain any document related to any grievance that's made. That's correct. Not any grievance, but the grievance at issue here was one related to an altercation between an inmate and an officer. And after that, the grievance related to the use of restraints, a restraint chair, the use of pepper spray. It alleged all sorts of nefarious conduct. So in this circumstance, the grievance did put them on notice of potential future litigation. That litigation did not have to be specifically for the need to decontaminate. The law simply does not require that level of specificity because... Well, but how would it... In a weird way, I think it does here, though, because this wasn't a video of the altercation itself. This was a video after the fact. And so it has much more limited... I mean, your argument might have more force if it had been of the altercation. That makes sense. But I mean, at what point does this... What if they'd had a video of them a week later? Would they have to retain that? What if they'd had a video of them two weeks later? Would they have to have had to retain that? So I think the point here is that the video was the absolute immediate aftermath of the pepper spray. It was a video showing Mr. Charlton restrained in his chair. It was a video showing his physical condition. It was the absolute best evidence to support his subsequent claim for deliberate indifferences and medical needs. It was just the only evidence that he could show the jury to allow the jury to conclude for themselves whether he was credible in his account and whether they were actually deliberately indifferent to his needs. Now I want to mention a few policy ramifications of this decision. So first of all, as a result of these decisions, this decision to apply the Exfoliation Standard to conclude there was no duty, the defendants were actually able to argue to the jury that the lost video would not have shown anything helpful to Mr. Charlton's claims and further were able to argue to the jury in closing that Mr. Charlton failed to happen, failed to show what would have happened with the video. The district court then issues this ad hoc jury instruction saying that it's nobody's fault that the video is missing. So rather than remedy this exfoliation of evidence, what ended up happening is at trial the defendants were actually made better off by being able to call into question Mr. Charlton's case based on the missing evidence. Again, evidence that he had no hand in destroying and evidence that he could not have ensured was preserved for his case. Now from a policy perspective, this opens a door to, it's a gap in the state's responsibility in preserving relevant evidence. Can I ask you, you say the state's responsibility. Is your argument based that the prison should have made a copy before they gave it or is your position that even the OSP, their destruction itself should be, the inference should be given to the prison? So the position here, it could be any number of ways that this evidence could have been preserved. Again, immediately they were on notice that this was unusual enough, a physical force incident, that a copy could and should have been made before the video was given to the Oregon State Police. But even after it was given to the Oregon State Police, before the video was destroyed, and it was destroyed in March of 2017, by that time there had been five times that notice had been provided and specific notice about the claim for deliberate indifference to the medical need to decontaminate. So by that time the defendants certainly should have at least contacted OSP to request that the video be returned, regardless of whether OSP had an independent duty to make a copy. And in this case, it was an abuse of discretion to allow these arguments to be made to the jury when it was very simple to comply with the duty to preserve evidence and it could have been done. Can I ask you just one question before we sit down about the district court's negligence finding? Because I think you do, in addition to having a duty, you also have to have been negligent and failing to comply with that. And so why did the district court clearly err in concluding, I guess, that even if there was a duty triggered at the point you were talking about, why wasn't the prison entitled to assume that the Oregon State Police folks would just hold on to the video and that it would be available once your client finally got around to actually requesting it in discovery? Yes, Your Honor. So I think the standard in this circuit is clear that a culpable state of mind here can include negligence and that bad faith is not required and that's in Glover v. Bick. And so here the district court erred when concluding, my understanding of the district court's ruling is that there was no duty and regardless, the duty was satisfied. The negligence piece, our position is that it's at least grossly negligent for the defendants not to ensure the preservation here because, again, the SD card was part of this UIR record and it's not enough to assume that another agency in the same machinery of the state will preserve. The obligation was on defendants. Why not? That's what I'm saying. What evidence did your client put on to show that it was okay, we entrusted it to another responsible government agency. Presumably they'll hold on to it just like we were required to. What evidence suggested that that assumption was negligent? Well, I suppose the best evidence here is that what exactly happened here is that this assumption ended up not panning out for Mr. Charlton at trial. This didn't work in his individual case. But the bigger point is the abuse of discretion happened here because even assuming it was just negligent, the trial court allowed the state to then argue that this was somehow or suggest that this was somehow Mr. Charlton's fault. And so, coupled together with what actually happened at trial, this is just something that shouldn't be allowed from a policy perspective. We'll give you some time for rebuttal. May it please the court and counsel, Stacey Chaffin on behalf of defendants. Even if defendants' legal arguments today are correct, and I'm wrong that this court has not adopted residential funding, and I'm wrong that negligence is not an appropriate culpable mental state to impose foliation sanctions, and I'm wrong that the actions of third parties should not be imputed to these defendants who had nothing to do with the SD card. Let's assume I'm wrong about all of that. Plaintiff's argument still fails. There is no case law in this court which would have required the district court to issue the sanctions that plaintiff requested. Foliation sanctions are squarely within the district court's discretion. And here, the district court did not abuse that discretion when it denied plaintiff's motion for foliation did in opening and in closing. And when the district court issued the jury instruction that the video was unavailable, not only was that jury instruction correct, but it didn't prohibit plaintiff from continuing to make his argument about the video to the jury. And plaintiff did, again, in rebuttal closing. And for those reasons, the district court did not abuse its discretion because it didn't have a duty to do anything outside of what it did. What role do the retention policies play here? If you violate, is that that there was sort of a duty for at least a company? I haven't looked at whether that's the same for a government entity, but to comply with its retention policies. Is it right that that can only go to the culpability, but it can't be used on the front end to show a duty itself? Well, in this court, at least, this court has not decided that violating the preservation policies would create that duty in the first place or would show a negligent culpability. So what we had in this case is competing policies. We had the district court, which found that the parties in this case followed their standard policy to ensure that the criminal evidence was protected and that the chain of custody was protected. And then there was also this separate retention policy. But creating a copy of the document would not have been a violation. I mean, that would have been one way to bridge the two issues, wouldn't it? It would have been, but that was not the policy that was at place at the facility at the time. And again, that was a finding that the district court made that there was no requirement at that time in the facility for a copy of the videotape to be made. But by sending it out and assuming that it was going to be kept by another government agency, the district court said that was compliance with the retention policy? Yes, the district court made that finding. And also, again, found undisputably that providing evidence to the Oregon State Police had generally allowed safekeeping and preservation. And that's a factual finding that has not been challenged. But your position is even if the district court hadn't made that finding, and even if there had been a violation of the retention policy in some formal way, that in itself would not have been enough to disturb the district court's finding? Correct, yes. Yes. And I would like to highlight again that this court has not specifically adopted residential funding through, which you see in the Apple case, the district court case from California. What residential funding does is it identifies a three-part test. And this court referenced residential funding in a case, Miranda v. Wyatt. But in that case, I would note that it was below, it was heard before the updates to Federal Rules of Civil Procedure 37E, which relates to the preservation and destruction of electronically stored information. And what Rule 37E says is that it specifically rejects residential funding and cases like it that allow negligence as a culpable mental state. And that's because the purpose of spoliation sanctions is twofold. One is there's this common sense understanding that a party that destroys relevant evidence was more likely to have been harmed by that evidence. And the second is punitive. It's to ensure that relevant evidence is not destroyed before it can make it to the trial court. And a culpable mental state of negligence does not meet those rationale. And here you have that exact scenario. You have defendants in this case who are being sued in their individual capacities that have nothing to do with the SD card. They didn't touch it. They didn't put in the evidence locker. And they certainly didn't destroy it. And so those purposes of spoliation would not be served by penalizing individuals who had nothing to do with the actual action. On this point on the culpability, but I know you're arguing bad faith should be the standard, but it seems like we've really limited that to, you know, default judgment. So for adverse inference, if we don't do, we don't accept bad faith, is it still negligence, knowledge or something else? Yeah, I'm sorry. It would be something else. I'm so sorry if the briefing suggests that. My argument is not that bad faith is required for an adverse inference. A finding of potentially willfulness would be appropriate, which is what plaintiff actually argued below, that defendants were willful when the evidence was destroyed in this case. So no, bad faith isn't required, but negligence is certainly not an appropriate culpable mental state. The other things I'd like to highlight is that plaintiff notes that the video is the only evidence or the best evidence that was available to prove his case. But I would note that at the trial, plaintiff was permitted and did introduce exhibits which showed photographs of his condition immediately after being pepper sprayed. There were photographs of him in the restraint chair. There was testimony from defendants, witnesses that acknowledged that he was suffering the effects of being pepper sprayed. There was plaintiff's own testimony that described his condition. And that was certainly additional evidence that was permitted by the district court in this case. And the kind of, when the district court issued that jury instruction that the video was unavailable, if you read the transcript, it shows that it was because defendant in closing argument made a statement that could have been interpreted that the video was not actually unavailable, that it wasn't unavailable to both parties. And so the district court stepped in and provided an instruction to limit that statement by the defense. And here, that instruction was one where we have about a minute of an untranscribed bench conference, and we have the district court coming back on the record saying, the parties have agreed. The parties agree that this video is unavailable. What that instruction did not do was say that the defendants didn't do anything to cause the destruction. It didn't, again, prohibit plaintiff from making argument on that topic. It just said that the video is unavailable. And in the spoliation context, that's really step one, is the evidence available. Can I go back to one of the arguments you were making earlier? What documents were asked in a document request to defendants? By the defendants? No. By plaintiff, he did request the video, but he didn't make that request until after the video had already been destroyed. I see. So the video was requested in June of 2017 and had been destroyed in March 2017. But I guess even if they, before March of 2017, let's say a plaintiff had actually served a subpoena on OSP, and then they destroyed it after that. Your argument, I think you'd still be in here saying, it doesn't matter, that's a third-party spoliation issue. It can't be imputed to the defendants here, right? Certainly. Certainly. Especially here where it's the actions of a third-party government actor being asked to be imputed to individuals who are being sued in their individual capacity. We shouldn't be in a position where a government action is then translated to these specific people. And yes, I mean, it would have been good for our case to show that video. It would have showed how the defendants in this case responded to any requests that plaintiff made. And also one clarification, the video itself was taken about two hours after plaintiff was pepper sprayed. It is not a video that was immediately after he was pepper sprayed. We have the video of the altercation. We have the video of him being pepper sprayed. We have the photographs immediately thereafter. But this was, there was a break in time. Would your argument, you'd be in making the same argument if you had destroyed the video for the pepper, the actual incident itself, though, would you? Absolutely. Yes. But at least in this case, it's not immediately thereafter. And again, I would just note that this court has no case law which would have required the district court to act in any specific way. The district court did not abuse its discretion. And I'd ask that this court affirm. Thank you. We'll give you two minutes for rebuttal. So I want to respond to a couple of the points made here. The first being about competing policies between UIR retention and preserving documents and the chain of custody, and then the purpose of spoliation and the third party destruction issue. So first, I think it's important to note that there is no conflict in the policies. There is no competing policy issue before this court. And that's because there is absolutely nothing in the record that would support the district court's finding that actually making a copy would create a chain of custody issue. The closest we get in the record is that making a copy would have opened the door to human error. But of course, we know the biggest human error of all happened by the failure to make this copy. So it is possible and easy to comply with both policies. And the defendant should have made a copy or should have requested the Oregon State Police to give back a copy of this video. Now, the second argument I wanted to provide is about the purpose of spoliation. Yes, the purpose of spoliation sanctions are evidentiary and prophylactic. But here, the prophylactic purpose is especially salient. Giving an adverse inference instruction would have deterred the parties from destroying evidence that is relevant before trial. Now here, the absolute opposite result happened. The state was permitted to argue that the destruction was irrelevant and somehow placed the burden on Mr. Charlton to explain the destruction. This is a bad policy to allow. Now, about the third party destruction issue, yes, here it is undisputed that OSP is the actual party that destroyed the evidence. But the fact of the matter is that the state defendants should not be allowed to shield themselves from liability simply by passing evidence to another agency of the state. And that's because cases involving inmates will often have these issues where the evidence will not be destroyed by the actual named defendants. It could be their record custodian that fails to preserve, somebody else in the system. But a party's obligation to preserve evidence should not be satisfied by merely passing that evidence to someone else despite being put on notice that it is potentially irrelevant. And finally, I want to rebut quickly the best evidence argument. Simply put, this is a two-hour video showing Mr. Charlton restrained, seeking medical attention, and would have supported his claim for deliberate indifference as medical need to decontaminate. It's the best evidence, and it was taken from him. Okay, thank you. Thank you to both counsel for your arguments in the case. The case is now submitted, and I would note that the court is also submitting five cases today. Sanchez-Randez v. Garland, case number 17-73511. Zaber v. Garland, case numbers 18-72054 and 19-71326. United States v. Ellington, case number 21-35544. United States v. Harris, case number 21-35544. And Johnson v. Kijikazi, case number 21-35844. And with that, we'll be in recess for the day. Thank you. All rise.
judges: WATFORD, NELSON, LEE